# EXHIBIT B

DocuSign Envelope ID: 2DB6DB35-E41F-4445-B7CC-375647DA98BD

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| **CHRISTIAN CHICHESTER, ABBY JUSTINGER, DAVID MAHONEY, and AMANDA SCHMITZ, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**SHIPBOB, INC.,**<br><br>**Defendant.** | **Civil Action No.** |

**JOINT STIPULATION OF SETTLEMENT AND RELEASE AGREEMENT**

 This Joint Stipulation of Settlement and Release Agreement (together, with the exhibits hereto, the "Agreement") is made and entered into by and between Christian Chichester, Abby Justinger, David Mahoney, and Amanda Schmitz ("Named Plaintiffs"), individually and on behalf of a collective they seek to represent (the Named Plaintiffs and members of the collective they seek to represent are collectively referred to as "Plaintiffs"), and ShipBob, Inc. ("Defendant") (Plaintiffs and Defendant are referred to herein as, collectively, the "Parties" or individually, a "Party").

**RECITALS**

 **WHEREAS**, on or about May 14, 2021, Named Plaintiffs, through counsel, notified Defendant of overtime-related claims they intended to file against Defendant on behalf of themselves and similarly situated employees and invited Defendant to explore the potential for pre-litigation resolution of those claims;

 **WHEREAS**, Named Plaintiffs and Defendant entered into a Tolling Agreement, effective as of May 28, 2021, to allow them an opportunity to explore potential pre-litigation resolution of the claims raised by Named Plaintiffs;

 **WHEREAS**, Defendant provided payroll data to Plaintiffs' Counsel (as defined below) to allow them to calculate potential damages for the asserted claims;

 **WHEREAS**, as a result of private settlement mediation before mediator Lynn Cohn on September 15, 2021, the Parties have agreed to fully and finally resolve this matter on the terms and conditions described herein;

**WHEREAS**, as a means of seeking Court approval of the settlement, within 14 days after this Agreement is fully executed, Named Plaintiffs, on behalf of themselves and others similarly situated, will prepare, send to Defendant for review and approval, and then file a Complaint against Defendant asserting various claims, including claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

**WHEREAS**, Defendant denies all of the allegations which were raised or could have been raised in the Action (as defined below) and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action which were asserted or could have been asserted in the Action. Nonetheless, without admitting or conceding any wrongful conduct, liability or damages, Defendant has agreed to a settlement on the terms set forth in this Agreement to avoid the burden, expense, and uncertainty of litigation; and

**NOW, THEREFORE**, in consideration of the mutual promises set forth in this Agreement, as well as the consideration provided, the Parties agree to a full and complete settlement of the claims which were asserted or could have been asserted in the Action on the following terms and conditions and further agree that this settlement shall have no evidentiary effect in any subsequent litigation outside of this Action, except subsequent litigation to enforce the terms of the Settlement Agreement.

## 1.    DEFINITIONS

The following terms, as used in this Agreement, are defined as follows:

a.    "Acceptance Period" means the 150-day period after initial mailing during which an Eligible Settlement Class Member must sign and cash a Settlement Check.

b.    "Action" means the civil action to be filed for settlement purposes in the United States District Court for the Northern District of Illinois, captioned *Chichester v. ShipBob, Inc.*

c.    "Applicable Work Weeks" means the weeks worked as BDRs, as defined below, during the Class Period.

d.    "Approval Order" means an order to be approved and entered by the Court, which approves the Settlement and this Agreement, and enters final judgment, in a form substantially similar to the Proposed Order Approving Collective Action Settlement, attached hereto as Exhibit A.

e.    "BDRs" means the following job positions: Business Development Representatives; Business Development Representatives/Sales Ops; Business Development Team Leads; Enterprise Business Development Representatives; Inbound BDR Team Leads; Inbound Business Development Representatives; Mid Market Business Development Representatives; Outbound Business Development Representatives; Partner Development Specialists; Sales Enablement Associates; Sales Enablement Managers; Senior Business Development Representatives; Senior Business Development, Team Leads; Senior Outbound BDRs; Senior Team Leads Inbound; and Team Lead Outbound BDRs.

f.      "<u>Complaint</u>" means the Complaint filed to initiate the Action.

g.      "<u>Class Period</u>" means the period between May 15, 2018 and August 15, 2021.

h.      "<u>Court</u>" means the United States District Court for the Northern District of Illinois.

i.      "<u>Defendant's Counsel</u>" means Litchfield Cavo LLP.

j.      "<u>Effective Date</u>" means the first date the Final Approval Order is no longer appealable, which shall be 31 days after the Parties' motion for final settlement approval is granted by the Court if no timely appeal of such order is filed, or if an appeal is filed, the date on which such appeal is final.

k.      "<u>Eligible Settlement Class Member</u>" means Named Plaintiffs and 156 additional persons employed by Defendant as BDRs at some point during the Class Period and who are identified in the payroll data produced by Defendant to Plaintiffs' Counsel.

l.      "<u>Employer Payroll Taxes</u>" means Defendant's share of taxes which an employer is required to pay arising out of or based upon the payment of wages to Eligible Settlement Class Members as part of this Settlement, including FICA, FUTA, and SUTA obligations.

m.      "<u>Gross Settlement Amount</u>" means $1,200,000 which is the sum that Defendant has agreed to pay to fully and finally resolve and settle the claims which are asserted or could have been asserted in the Action, including any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Participating Settlement Class Members, and any Court-approved Service Awards. Defendant will not be required to pay any more than the Gross Settlement Amount, except Defendant will pay the Employer Payroll Taxes and settlement administration costs in addition to the Gross Settlement Amount.

n.      "<u>Net Settlement Fund</u>" means the remainder of the Gross Settlement Amount after deductions, payments, and allocations for: (i) Court-approved attorneys' fees and costs for Plaintiffs' Counsel, and (ii) the Court-approved Service Awards.

o.      "<u>Participating Settlement Class Members</u>" means each Eligible Settlement Class Member, including Named Plaintiffs, who signs and cashes a Settlement Check during the Acceptance Period.

p.      "<u>Plaintiffs' Counsel</u>" means Werman Salas P.C.

q.      "<u>Released Parties</u>" means Defendant and Defendant's parent, subsidiary and affiliated companies, including but not limited to ShipBob, Inc.

r.      "<u>Settlement</u>" means the settlement between the Parties which is embodied and contained in this Agreement.

s.      "Settlement Account" means a Qualified Settlement Fund ("QSF") established and controlled by the Settlement Administrator.

t.      "Settlement Administrator" means Analytics LLC.

u.      "Settlement Check" means the check issued to each Eligible Settlement Class Member for his or her proportionate share of the Net Settlement Fund.

v.      "Settlement Notice" means the document entitled Notice of Settlement and Opportunity to Participate, to be approved by the Court in a form substantially similar to the Notice attached hereto as Exhibit B.

## 2.      INITIAL PROCEDURAL ISSUES

a.      Binding Agreement

This Agreement is a binding agreement and contains all material terms.

b.      Retention and Responsibilities of the Settlement Administrator.

i.      The Settlement Administrator shall be responsible for, among other things, preparing, printing and mailing the Settlement Notices and Settlement Checks as directed by the Court; distributing the Settlement Notice to Settlement Collective Members via email; updating addresses with the U.S. Postal Service's National Change of Address ("NCOA") database; making commercially reasonable searches for new addresses for Eligible Settlement Class Members whose Settlement Notices and Settlement Checks are returned as undeliverable with no forwarding address; determining the amount of the Defendant's share of the applicable payroll tax and the amount of all payroll tax deductions to be withheld; providing status reports to Defendant's counsel and Plaintiffs' Counsel regarding the status of the mailing of the Settlement Notices and Settlement Checks; issuing and mailing checks for Court-approved Service Awards to Named Plaintiffs; wiring Court-approved attorneys' fees and costs to Plaintiffs' Counsel; printing and providing W-2s and 1099 forms as required under this Agreement and applicable law; and for such other tasks set forth in this Agreement or as to which the Parties mutually agree.

ii.      The Settlement Administrator shall also establish, control, and maintain the Settlement Account according to the terms of this Agreement, and be responsible for filing all required tax returns for the Settlement Account and paying any taxes due.

iii.      The Parties agree to cooperate with the Settlement Administrator, and to provide accurate information necessary to send the Settlement Notice and Settlement Checks in accordance with the terms of this Agreement.

## 3. MONETARY TERMS OF SETTLEMENT

a. Settlement Payments

i. Defendant agrees to pay the Gross Settlement Amount to fully resolve the Action and satisfy all amounts to be paid to Eligible Settlement Class Members, any Court-approved Service Award(s), and Plaintiffs' Counsel's Court-approved attorneys' fees and costs.

ii. Defendant also agrees to pay the Employer Payroll Taxes and cost of the Settlement Administrator in addition to the Gross Settlement Amount.

b. Settlement Amounts Payable as Attorneys' Fees and Costs

i. In their Approval Motion (as defined below), Plaintiffs' Counsel shall ask the Court to approve payment of up to $400,000 of and from the Gross Settlement Amount as an award of attorneys' fees and a payment of up to $10,000 of and from the Gross Settlement Amount as reimbursement of costs. That amount shall be in full satisfaction of any claim or request for attorneys' fees and costs, and Plaintiffs agree that they shall not seek, and not be entitled to, any additional attorneys' fees or costs incurred in relation to this Action. Defendant agrees that it will not object or otherwise comment on Plaintiffs' Counsel's application for attorneys' fees and costs in this Action.

ii. In the event that the Court rejects or reduces Plaintiffs' Counsel's application for attorneys' fees and costs, such determination shall not negatively impact the Court's consideration of whether this Agreement represents a fair and reasonable resolution of bona fide disputes under the FLSA. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. If the Court awards less than the requested amount and Plaintiffs' Counsel does not appeal that award, or if Plaintiffs' Counsel appeals the award and the result of that appeal is an award of less than the amount requested, only the awarded amount shall be paid to Plaintiffs' Counsel and shall constitute full satisfaction of Defendant's obligation to pay attorneys' fees and costs in accordance with Section 3(a). This Settlement Agreement is not conditioned upon the Court's approval of Plaintiffs' Counsel's fees and costs and any amounts that are not approved for fees and costs shall become part of the Net Settlement Amount on the Effective Date.

iii. All of Defendant's own attorneys' fees, costs and expenses incurred in this Action shall be borne by Defendant.

c. Service Awards

i. The Named Plaintiffs Christian Chichester, Abby Justinger, David Mahoney, and Amanda Schmitz will each apply to the Court to receive a $7,500.00 Service Award ("Service Award") for services they have rendered to the Eligible Settlement Class Members.

   ii. Defendant will not contest the amount sought for the Service Awards.

   iii. Should all or part of the Service Awards sought not be approved by the Court, unapproved amounts shall become part of the Net Settlement Fund.

  d. <u>Distribution of Payments</u>

   i. The amount of each Settlement Check was determined by Plaintiffs' Counsel from the pay records produced by Defendant.

   ii. **For the time period prior to January 21, 2021:** Each Eligible Settlement Class Member's Semi-Monthly Regular Earnings were computed by subtracting Commission, Referral Bonus and SPIFF earnings from the Gross Pay. The Semi-Monthly Regular Earnings were multiplied by 24 (pay periods) and divided by 52 (weeks) to compute each Eligible Settlement Class Member's Weekly Earnings. Eligible Settlement Class Member's Regular Rate of Pay was computed by dividing his or her Weekly Earnings by the number of Hours Worked per Week. For purposes of settlement, Plaintiffs' Counsel assumed that each Eligible Settlement Class Member worked approximately 49 hours per week. Each Eligible Settlement Class Member's Monthly Commission and SPIFF Earnings were divided equally among the pay periods that fell within the month they were earned. The Additional Overtime Premium Rate was computed by dividing the Weekly Commissions/SPIFF by the number of hours worked per week. Plaintiffs' Counsel calculated the Owed Overtime Wages by multiplying the sum of the Regular Rate and the Additional Overtime Premium Rate times one-half and then times the number of Hours Worked per Week in excess of 40 in each Applicable Work Week. The formula utilized by Plaintiffs' Counsel is as follows:

  (Semi-Monthly Earnings *24) ÷ 52 = Weekly Earnings
  Weekly Earnings ÷ Hours Worked per Week = Regular Rate
  (Commission Earnings + SPIFF Earnings) ÷ # Pay Periods in Earned Month =
  Comm/SPIFF PP EarningsWeekly Commission/SPIFF ÷ Hours Worked per Week = Addt'l
  Overtime Premium
  Hours Worked per Week – 40 = Overtime Hours
  (Regular Rate + Addt'l OT Premium) * 0.5 * Overtime Hours = Owed Overtime Wages

   iii. **For the time period January 22, 2021 to August 15, 2021.** The Monthly Commission and SPIFF Earnings were divided equally among the pay periods that fell within the month they were earned. The Total Hours Paid were computed by adding the Regular Hours Total and the Overtime Hours Total. The Commission/SPIFF earnings were divided by the Total Hours Paid in each pay period to compute the Additional Overtime Premium. The Owed Overtime Wages were computed by multiplying the number of Overtime Hours Total times one-half the Additional Overtime Premium Rate.

  For each Pay Period, the formula is as follows:

(Commission Earnings + SPIFF Earnings) ÷ # Pay Periods in Earned Month =
Comm/SPIFF PP Earnings
Regular Hours Total + Overtime Hours Total = Total Hours Paid
Commission/SPIFF PP Earnings ÷ Total Hours Paid = Addt'l Overtime Premium
Overtime Hours Total * Addt'l Overtime Premium * 0.5 = Owed Overtime Wages

iv.     An amount equal to the Owed Overtime Wages was added to each Eligible Settlement Class Member's Owed Overtime Wages as Liquidated Damages. This sum is their Total Owed Damages. Each Eligible Settlement Class Member's share of the Net Settlement Amount shall be determined by dividing the sum of his or her Total Owed Damages (the numerator) by the Total Owed Damages for all Eligible Settlement Class Members (the denominator).  The quotient shall be each Eligible Settlement Class Member's "Ratable Share." The Settlement Payment shall be the product of the Eligible Settlement Class Member's Ratable Share times the Net Settlement Amount. If an Eligible Settlement Class Member's Settlement Payment is less than $50.00, their Settlement Payment will be increased to the Minimum Settlement Payment of $50.00.

v.     For tax purposes, 50% of each payment to an Eligible Settlement Class Member shall be treated as wages, and 50% of such payment shall be treated as liquidated damages.  Payments treated as owed wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholdings and the employee share of the FICA tax, and shall be reported as earned in the year of payment to the Internal Revenue Service under the payee's name and Social Security number on a Form W-2.  Payments treated as liquidated damages shall be made without withholdings and shall be reported as earned in the year of payment and, to the extent required by law, under the payee's name and Social Security number on a Form 1099.  The Settlement Administrator will issue to Named Plaintiffs and each Participating Settlement Class Member an IRS Form 1099 for the non-wage statutory damages portion of each Settlement Payment, if required by IRS regulations.  The Settlement Administrator will also issue an IRS Form 1099 to Named Plaintiffs for the Service Awards.  The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholdings, deciding the appropriate tax rate, issuing the Settlement Checks and the Service Awards, and issuing the Forms W-2 and Forms 1099.

4.     **SETTLEMENT TIMELINE**

The Parties agree to the following timeline for the completion of the Settlement and dismissal of the Action:

a.     By [date], Plaintiffs' Counsel shall file a Motion for One-Step Approval of Collective Action Settlement and Authorization of Notice (the "Approval Motion").  Plaintiffs' Counsel will provide Defendant's Counsel with a draft of the Approval Motion for review and comment as soon as practicable before filing it with the Court.  Defendant will not oppose the Approval Motion.  Along with the Approval Motion, Plaintiffs' Counsel also will file the Agreement, Proposed Approval Order, and Settlement Notice.  Among other things, the Approval Motion will ask the Court to: (i) issue and enter the Approval Order approving the Settlement as a

fair and reasonable resolution of bona fide disputes under the FLSA, (ii) approve the proposed Settlement Notices to be sent to Eligible Settlement Class Members and the Settlement Notice distribution process, (iii) incorporate the terms of this Agreement, (iv) approve the requests for Plaintiffs' Counsel's attorneys' fees and costs and the Service Awards, and (v) enter a final judgment and order of dismissal (the "Final Judgment") dismissing the case without prejudice, with leave to reinstate on or before 60 days after the Effective Date, and in the event a motion to reinstate is not filed on or before 60 days after the Effective Date, the case shall be deemed, without further order or action of the Court, to be dismissed with prejudice.

b.      Production of Class Data: Within seven days after the Effective Date, Defendant will provide Plaintiffs' Counsel and the Settlement Administrator with the following information for each Eligible Settlement Class Member: (i) name, (ii) last known mailing address, (iii) last known telephone number, (iv) personal email address (if known), (v) employee ID number; and, to the Settlement Administrator only, (vi) social security number (the "Class Data").

c.      Upon receipt of the Class Data from Defendant, the Settlement Administrator will verify the last known mailing address for each Eligible Settlement Class Member using the National Change of Address (NCOA) Database, or a comparable database.

d.      Within seven days after the Effective Date, Defendant will deposit $1,200,000 into the Settlement Account.  With respect to the QSF, the Settlement Administrator shall: (i) calculate, withhold, remit, and report each Eligible Settlement Class Member's share of applicable payroll taxes (including, without limitation, federal, state, and local income tax withholding, FICA, Medicare, and any state or local employment taxes), and (ii) satisfy all federal, state, and local income and other tax reporting, return, and filing requirements with respect to the QSF.

e.      Within seven days after the Effective Date, Defendant will pay the cost of settlement administration to the Settlement Administrator.

e.      Payment of Employer Share of Payroll Taxes: No later than 21 days after the Court enters the Approval Order, the Settlement Administrator shall determine the Employer Payroll Taxes and shall communicate such amount to Defendant with a detailed explanation of the calculations.  No later than seven days after the Effective Date, Defendant will deposit the Employer Payroll Taxes into the Settlement Account.  In the event of any dispute as to the calculation of the Employer Payroll Taxes, Defendant and the Settlement Administrator shall meet and confer in good faith in an attempt to resolve the dispute.  If the dispute cannot be resolved, it shall be submitted to the Court for a final determination. The Settlement Administrator shall thereafter remit and report the applicable portion of the Employer Payroll Taxes to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings. Defendant agrees to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the Employer Payroll Taxes.

f.      Payment of Plaintiffs' Counsel's Fees and Costs, Settlement Payments and Service Awards: Within 21 days after Defendant fully funds the Settlement Account with the Gross Settlement Amount and the Employer Payroll Taxes, the Settlement Administrator shall make the following payments from the Settlement Account:

i. The Settlement Administrator shall issue Settlement Payments via First Class U.S. Mail to each Eligible Settlement Class Member for his or her ratable share of the Net Settlement Fund as calculated pursuant to Section 3 of this Agreement. The Settlement Checks shall be negotiable by the Eligible Settlement Class Members for 150 days from the date they were mailed by the Settlement Administrator (the "Check Cashing Deadline"). The Settlement Administrator will include a notice (Exhibit B hereto) with each Settlement Check to each Eligible Settlement Class Member explaining the terms of the Settlement and detailing each Eligible Settlement Class Member's Settlement Payment. The face of each check shall clearly state that the check must be presented for payment within 150 days.

ii. If any Settlement Check is returned to the Settlement Administrator as undeliverable with a forwarding address, the Settlement Administrator will promptly forward the Settlement Check to the forwarding address. If any Settlement Check is returned to the Settlement Administrator as undeliverable without a forwarding address, the Settlement Administrator will conduct a new search for a current address through available databases and will forward the Settlement Check to the new address obtained in this manner, if any. If, after this second mailing, the Settlement Check is again returned as undeliverable and if no other forwarding address is provided by the Settlement Class Member or is otherwise located before the Check Cashing Deadline, the mailing process shall end for that Eligible Settlement Class Member.

iii. The Settlement Administrator shall mail to the addresses provided by Plaintiffs' Counsel: (A) a check issued to Named Plaintiffs for their Settlement Payment, and (B) if applicable, a check issued to Named Plaintiffs for their Service Award.

iv. The Settlement Administrator shall wire to Plaintiffs' Counsel their award of attorneys' fees and costs.

v. Within 14 days after the expiration of the Check Cashing Deadline, the Settlement Administrator will provide to Defendant's Counsel and Plaintiffs' Counsel: (A) scanned copies of the negotiated Settlement Checks, and (B) a list, in Excel format, of the names of all Eligible Settlement Class Members who negotiated their Settlement Checks including for each: (1) the amount of the Eligible Settlement Class Member's Settlement Check, (2) the amount of the Settlement Check allocated to wages, and (3) the amount of the Settlement Check allocated to liquidated damages.

g. Retention by Defendant of any Uncashed Settlement Checks: Any Settlement Checks that remain uncashed after the Check Cashing Deadline shall be deemed void. The Settlement Administrator will return the funds from any such Settlement Checks to Defendant within 28 days after the Check Cashing Deadline.

## 5. RELEASE OF CLAIMS

a. Each Settlement Check shall contain, on the back of the check, the following endorsement:

**CONSENT TO JOIN AND RELEASE OF CLAIMS:**

By negotiating (i.e. cashing) this check, I consent to join the Fair Labor Standards Act claims in the case of *Chichester v. ShipBob, Inc.*, Case No. [To be added] (the "Lawsuit"), in United States District Court for the Northern District of Illinois, and I agree to be bound by the Settlement Agreement and release of all claims or causes of action and related damages for unpaid overtime wages under federal, state, and local law while I worked for ShipBob, Inc. as a BDR between May 15, 2018 and August 15, 2021. I understand that I have up to 150 days from the date I was mailed this check to sign and cash it.

b.      Eligible Settlement Class Members who negotiate their Settlement Checks will release the Released Parties from all claims or causes of action they have for unpaid overtime wages under federal, state, and local law while they worked for ShipBob, Inc. as BDRs between May 15, 2018 and August 15, 2021.

c.      In exchange for their Service Awards, Named Plaintiffs will release Defendant and the Released Parties from any and all claims or causes of action arising from or relating to Named Plaintiffs' employment with Defendant from May 15, 2018 and August 15, 2021, including but not limited to claims, demands, and causes of action for unpaid wages, penalties, liquidated damages, interest, costs, attorneys' fees, and any other relief under the FLSA, as well as any employment-related claims under any federal, state or local law or regulation, including but not limited to Title VII of the Civil Rights Act of 1964, Section 1981, the Americans with Disabilities Act, the Equal Pay Act, the Family and Medical Leave Act, the Fair Credit Reporting Act, the Age Discrimination in Employment Act, the Genetic Information Nondiscrimination Act, the Employment Retirement Income Security Act, any claim for workers compensation retaliation, and any employment-related claim arising out of tort, contract, or statute. Named Plaintiffs do not release or waive: (i) any claim they could make for unemployment compensation or workers' compensation benefits; (ii) any rights or claims that cannot be released as a matter of law pursuant to this Agreement; and (iii) their right to file an administrative charge with the National Labor Relations Board, the Equal Employment Opportunity Commission, or similar state agency (although they do waive their right to receive any monetary damages or other relief not explicitly provided for herein as a result of any such charge, to the extent the charge pertains to a claim that was released). If any Named Plaintiff does not receive a Service Award, that Named Plaintiff's general release will be null and void.

d.      Any Eligible Settlement Class Member who does not timely cash a Settlement Check will not be bound by any release of claims.

e.      The Parties agree and acknowledge that they have engaged in settlement negotiations through their attorneys and agree that they have reached an agreement with respect to the Settlement, as documented in this Agreement. Each of the Parties further agrees and acknowledges that they have had the benefit of advice, investigation and/or recommendations with reference to the subject matter of this Settlement Agreement, and that the discovery of additional information or records relevant to this Action shall not be a reason to vacate or nullify this Settlement Agreement. The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties to its terms and conditions.

## 6.   MUTUAL COOPERATION

The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 7.   INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

a.      Arm's Length Transaction.  The terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties.  Accordingly, this Agreement is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

b.      Good Faith Dealings.  If the Court does not approve any material condition of this Agreement, the Parties will work together in good faith to address and resolve the concerns raised by the Court in denying approval of the Settlement.

c.      No Assignment.  Named Plaintiffs, and Plaintiffs' Counsel represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action, and any attempt to do so shall be of no force or effect.

d.      Entire Agreement.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

e.      Captions.   The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

f.      Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Illinois, without regard to choice of law principles, except to the extent that the laws of the United States govern any matter set forth herein, in which case such federal law shall govern.

g.      Continuing Jurisdiction.  Consistent with the terms of this Agreement, the Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this

Agreement and of the Settlement contemplated thereby.

      h.    <u>Waivers and Modifications</u>.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval.  Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

      i.    <u>Notice</u>. The Settlement Notice will advise all Eligible Settlement Class Members of the binding nature of the release and that by signing and cashing a Settlement Check they are bound by the release provisions in this Agreement.

      j.    <u>Counterparts</u>. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

      k.    <u>Signatures and Transmittal</u>.  Either Party may execute this Agreement by causing his/its counsel to sign on the designated signature block below and transmitting that signature page via facsimile, email or other electronic means to counsel for the other Party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

DATED: November 8, 2021 , 2021      **Christian Chichester**

DocuSigned by:

*Christian Chichester*

6188A540F15345F...

DATED: November 8, 2021 , 2021      **Abby Justinger**

DocuSigned by:

*Abby Justinger*

A8202762BB084A1...

DATED: November 9, 2021 , 2021      **David Mahoney**

DocuSigned by:

B70A55748029472...

DATED: November 8, 2021 , 2021      **Amanda Schmitz**

DocuSigned by:

*Amanda Schmitz*

66F7A73256794C3...

DATED: _____, 2021      **ShipBob, Inc.**

11 / 03 / 2021      *Rahul Magan*

VP, Legal

-13-

DocuSign Envelope ID: 2DB6DB35-E41F-4445-B7CC-375647DA98BD

**Exhibit A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CHRISTIAN CHICHESTER, ABBY JUSTINGER, DAVID MAHONEY, and AMANDA SCHMITZ, individually and on behalf of all others similarly situated,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**SHIPBOB, INC.,**<br><br>    **Defendant.** | **Civil Action No.** |

**[PROPOSED] ORDER APPROVING COLLECTIVE ACTION SETTLEMENT**

The above-entitled matter came before the Court on Plaintiffs' Unopposed Motion for Approval of a Collective Action Settlement ("Approval Motion").

**The Settlement is Approved**

1.      The Court finds that the settlement in this Fair Labor Standards Act action is a fair and reasonable resolution of a bona fide dispute, and therefore, meets the requirements for approval.

2.      The Court approves the Parties' Joint Stipulation of Settlement and Release Agreement, attached to the Abrahamson Aff. as Exhibit A. and "so orders" all of its terms.

3.      The Court has reviewed and approves the Fair Labor Standards Act settlement as set forth in the Settlement Agreement. The terms of the Parties' Joint Stipulation of Settlement and Release Agreement are incorporated by reference into this Order.

A-1

4.      The Court approves the proposed Notice of Settlement and the proposed plan for its distribution.

5.      The Court approves the Service Awards for Christian Chichester, Abby Justinger, David Mahoney, and Amanda Schmitz.

6.      The Court grants Plaintiffs' request for attorneys' fees and out-of-pocket costs and expenses.

7.      The Court approves Analytics LLC, as the Settlement Administrator.

8.      This case is dismissed without prejudice, with leave to reinstate on or before 60 days after the Effective Date, and in the event a motion to reinstate is not filed on or before 60 days after the Effective Date, the case shall be deemed, without further order or action of the Court, to be dismissed with prejudice.

9.      This Court will retain jurisdiction over this Action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Joint Stipulation of Settlement and Release Agreement, including the distribution of the settlement funds.

10.      The Parties shall abide by all terms of the Joint Stipulation of Settlement and Release Agreement.

It is so ORDERED this ___ day of _____, 2021

_____
Hon.

A-2

<u>**Exhibit B**</u>

**[Date]**

**Via U.S. Mail and Email**
[Name]
[Street Address]
[City, State and Zip]

    **Re:    ShipBob, Inc. Overtime Lawsuit – Notice of Settlement and Opportunity to Participate**

Dear [Name]:

    You are receiving this letter because on _____ ____, 2021, a federal court in Illinois approved a $1,200,000 settlement of an overtime lawsuit (the "<u>Lawsuit</u>") against ShipBob, Inc. ("<u>ShipBob</u>"). You may participate in the settlement because you worked for ShipBob as a Business Development Representative; Business Development Representative/Sales Op; Business Development Team Lead; Enterprise Business Development Representative; Inbound BDR Team Lead; Inbound Business Development Representative; Mid Market Business Development Representative; Outbound Business Development Representative; Partner Development Specialist; Sales Enablement Associate; Sales Enablement Manager; Senior Business Development Representative; Senior Business Development, Team Lead; Senior Outbound BDR; Senior Team Lead Inbound; and/or Team Lead Outbound BDR (collectively, "BDR") between May 15, 2018 and August 15, 2021.

    This letter explains the Lawsuit, the settlement, how to participate in the settlement, and the effect of your cashing or depositing the enclosed check.

    **1.    What is the Lawsuit About?**

    Former BDRs ("Plaintiffs") employed by ShipBob filed this Lawsuit alleging that ShipBob misclassified them as exempt employees and failed to pay them and other similarly situated BDRs overtime wages in violation of the Fair Labor Standards Act (the "<u>FLSA</u>").

    ShipBob denies that it violated the FLSA. However, to avoid further dispute, protracted litigation, and related costs, ShipBob and the Plaintiffs have agreed to settle the Lawsuit.

    The Court presiding over this case has not made any rulings on the merits of the claims or defenses in the Lawsuit, and no party has prevailed. Rather, the parties came to a mutually agreeable resolution which the Court has approved.

    **2.    Does the Court Have an Opinion as to the Merits of the Lawsuit?**

This notice is for the sole purpose of providing you with objective and neutral information concerning your right to participate in the settlement. The Court takes no position regarding whether or not the claims made in the Lawsuit have legal merit.

**3.      How Was My Settlement Payment Calculated and What Does it Represent?**

ShipBob has agreed to pay a total of $1,200,000 to settle the lawsuit for 160 BDRs, which is the Gross Settlement Amount.  From that amount, the following payments are being made: Plaintiffs' attorneys' fees in the amount of $400,000 and costs up to $10,000; and payments to the four Named Plaintiffs in the amount of $7,500 each for the time and effort associated with their participation in the Lawsuit.  The remaining amount will be distributed among current and former BDRs who worked for ShipBob between May 15, 2018 and August 15, 2021.

Your payment was calculated by taking the overtime wages that were calculated to be allegedly owed to you under the formula provided in the Settlement Agreement and by dividing that number by the total amount calculated to be owed to all BDRs who are eligible to participate in the settlement.  The result is your ratable share of the Net Settlement Fund.  The enclosed settlement payment is your ratable share of the Net Settlement Fund.

**If you have questions about your settlement amount, contact Plaintiffs' Counsel identified below in Paragraph 8**.

**4.      How Do I Participate in the Settlement?**

To participate in the settlement, you should deposit or cash your settlement payment on or before [insert date 150 days from the date on the check].

**5.      Will I Owe Taxes on a Settlement Payment if I Participate?**

Your individual settlement payment has been separated into two equal amounts: 50% has been allocated to the claims asserted in the Lawsuit for unpaid overtime wages, and 50% has been allocated to the claims asserted in the Lawsuit for liquidated damages.  The portion allocated to unpaid overtime wages is subject to all authorized or required payroll tax deductions, just as if it were a regular paycheck, and it will be reported on an IRS Form W-2.  The portion allocated to liquidated damages will be reported as non-wage income on an IRS Form 1099.  ShipBob will pay the employer's share of applicable state and federal payroll taxes on the wage portion of your payment.  Normal employee payroll taxes have been deducted from the wage portion of your payment.  Neither Plaintiffs' counsel nor ShipBob or its counsel makes any representations to you concerning the tax implications of the settlement payment.  **Please consult with your accountant or other tax advisor regarding the tax consequences of the settlement amount paid to you.**

**6.      What are My Options?**

If you deposit or cash your settlement payment by _____, 2021, you will be consenting to opt into the Lawsuit.  By opting into the lawsuit, you agree to be bound by the Agreement to settle the case, and agree to release the Released Parties from all claims or causes of action you

have for unpaid overtime wages under federal, state, and local law while you worked for ShipBob, Inc. as a BDR between May 15, 2018 and August 15, 2021. The term Released Parties means Defendant and Defendant's parent, subsidiary and affiliated companies, including but not limited to ShipBob, Inc.

Please note that the check contains the following language which verifies your agreement to opt into the Lawsuit for purposes of the settlement and to waive and release any alleged overtime and other claims alleged in the Lawsuit:

*CONSENT TO JOIN AND RELEASE OF CLAIMS*:

By negotiating (i.e. cashing) this check, I consent to join the Fair Labor Standards Act claims in the case of Chichester v. ShipBob, Inc., Case No. 21-cv-06016 (the "Lawsuit"), in United States District Court for the Northern District of Illinois, and I agree to be bound by the Settlement Agreement and release of all claims or causes of action for unpaid overtime wages under federal, state, and local law while I worked for ShipBob, Inc. as a BDR between May 15, 2018 and August 15, 2021. I understand that I have up to 150 days from the date I was mailed this check to sign and cash it.

If you do not deposit or cash your settlement payment by _____, 2021, the check will become void and you will not participate in the settlement. You will not receive any money from this settlement and you will not release any claims you may have against ShipBob.

**7.     What Happens if My Address Changes Before I Receive my IRS Tax Forms?**

If your address changes before you receive your IRS tax forms, it is your responsibility to inform the Settlement Administrator, at the following phone number or address: [insert]

**8.     Are There More Details Available?**

Yes. This notice summarizes the basic material terms of the settlement. If you have questions about the settlement or your settlement payment, you may contact Plaintiffs' attorneys at:

Sally J. Abrahamson
Werman Salas P.C.
Email: sabrahamson@flsalaw.com
Phone: 202-830-2016

**Do not contact the Judge or the Court Clerk or ShipBob's attorneys about this settlement.**

Any questions regarding the tax implications of the settlement payments should be directed to your tax professional. Any questions about the settlement should be directed to Plaintiffs' attorneys.